Next case is number 18-2222 United States v. Samuel Jenkins. Ms. Horn. Thank you, Your Honors. May it please the Court. My name is Abigail Horn, and I represent the appellant Samuel Jenkins. May it please reserve three minutes for rebuttal. Granted. Mr. Jenkins was improperly sentenced under the Armed Career Criminal Act based on a prior Pennsylvania conviction for aggravated assault graded as a felony of the second degree, subsection A3. This offense is not categorically a violent felony for two equally sufficient reasons. First, it can be violated by offensive touching, such as spitting in the face or throwing urine. And second, it can be violated by failing to act. Let me just interrupt you for a minute on failing to act. The Supreme Court of Pennsylvania has the Harris case pending. Are you familiar with that? Yes. If in that case the Supreme Court of Pennsylvania says that we were mistaken in Mayo, then I assume you'd concede that the omission part of the case is unavailing to your client. Your Honor, I don't understand the certified question quite that way. I think regardless of what the Pennsylvania Supreme Court does with the certified question, there'll have to be further proceedings in Harris. Okay. Further proceedings in Harris, but Harris is the case the Supreme Court's deciding, right? Yes. They're going to say whether force is an element of subsection A1, but it's unclear how they'll address that question. Okay. So it's too hard to predict the effect that'll have. Yes, Your Honor. And the court doesn't have to reach that, of course, because the offensive touching issue is dispositive here. It's black letter law, Johnson, 2010, that offensive touching, also known as the force required to commit common law battery, is not force required for the ACCA. And as this court held in Quinones, spitting is offensive touching. It's the archetypical example of offensive touching. The same is so for throwing urine. These are deeply offensive acts. Of course, we don't want them to happen to us, but they're not painful or injurious. The question is whether Pennsylvania A3 can be violated in this way, and sometimes we come to the court with hypotheticals. Here we're not. We have three cases that show that it can, Childs, Hoy, and Connors. Childs, of course, was spitting in the face of a police officer. Hoy was throwing urine on a correction officer, and Connors was spitting on a corrections officer. Now, the government says... Why should we assume that there wasn't bodily injury in those cases, though? Well... The first two were plea, and the burden's on your client to satisfy the realistic probability test, correct? Well, we don't concede that it applies, but if it does, we satisfy it with these three prosecutions. But you have to... Well, why don't you think it applies? Well, it doesn't apply when the elements don't overlap, and the elements here are different. Causing bodily injury is not the same as the use of physical force. But even if we assume that it applies, then we get to Taylor, and Taylor says the Duenas-Alvarez line of cases is about prosecutions. Right. And here you've got not only prosecutions, you have convictions, which helps you. Yes, Your Honor. But we need to look at the nature of the convictions, right? And Connors and Hoy were both pleas, right? Right. And isn't it Jenkins' burden to show how those convictions occurred? Because the fact of conviction doesn't answer the question. Well, let me go to whether there was bodily injury in that case and what that means. Before we move on, can you just clarify, is what we should focus on the fact of a prosecution, or does that not have weight until there is a conviction via plea or by jury? Judge Cross, I don't think that the court needs to get there. In Taylor, the Supreme Court suggested a guilty plea would satisfy Duenas-Alvarez. It applies. It said we're not going to send the defendant on this empirical hunt for prosecutorial habits. So that language kind of goes to prosecution. And then they said many cases result in guilty pleas, which aren't available in commercial databases. So that suggests guilty pleas. But we have three convictions here to demonstrate for the court. I think Judge Hardiman was asking about whether there was actually bodily injury, and I do want to answer that. Well, yeah, and what I'm struggling with is physical force is required, and Johnson 2010 says physical force equals violent force. And the text of the statute at issue here maps onto that, but you've got these convictions that seem to suggest, well, is spitting really violent force or bodily injury? And what I'm asking is how do we know from the record of Connors, Hoy, and Childs that there wasn't bodily injury or violent force? Sure. Well, in Hoy, we presented the guilty plea colloquy. That's at appendix 176, and there's no suggestion. In the prosecutor's complete description of the offense there, there's no suggestion that there was bodily injury. In Connors, we presented the information. That's at appendix 169, and in that charging document, there's no charge of bodily injury. And in Childs, what we have is the reaction of the victim. It's not that anything happened with the spitting. The police officer in Childs assumed that Childs, perhaps based on appearance we don't know, was HIV positive. Childs, by all accounts, was not HIV positive, and the victim elected in that case to undergo prophylactic HIV treatment, which made him ill. And we know from Quinones that even if spitting can prompt a reaction by the victim, that doesn't convert spitting into something else. It's still just spitting, and so that wouldn't satisfy it either. Is your answer different if it's known that the individual spitting does carry some communicable disease? It wouldn't be, Judge Crouse, because we would still have to go to the least culpable way of violating the statute, and let's say even if Childs was positive and she knew it, or I'm sorry, I don't know the correct pronouns for that defendant, but let's say even if Childs was positive and knew it, spit isn't a mode of transmission for HIV. So spitting while HIV positive is still just spitting. And if we remember Quinones significantly, that's not just spitting. That statute required spitting by a person with a communicable disease. That's infected spit, and it's still out under Johnson 2010. Implicit in that is because it's not a mode of transmission. It's basically irrelevant. It's offensive. It's deeply offensive, perhaps alarming to the victim. You know, maybe the victim doesn't understand the mode of transmission, but it's still just spit. And in here, we don't have infected spit. Quinones was assumed to be HIV positive. Connors, there's nothing in the information about infection one way or the other. And Hoy, while he was HIV positive, according to the Superior Court opinion, there's no evidence that he knew it. And, in fact, interestingly, I looked at the guilty plea colloquy there, and the prosecutor didn't even include that as a fact in the guilty plea colloquy, again, at 176. Didn't the colloquy there show or the records show in Hoy that he threw urine on the correctional officer, striking him in the upper torso and head? Yes, Judge Hardiman. So, I mean, that could burn the eyes. I mean, why would we assume that wouldn't cause bodily injury? Well, there's no evidence of burning of the eyes. And, you know, the categorical approach, like it or not, it directs the court to look for the least culpable facts. And here we don't have burning the eyes. We have urine on the torso and head. No, but I thought here we're in the land of realistic probability. We're not in the – I mean, we're not categorically evaluating that crime, are we? Well, I think if we – I thought we're categorically evaluating this statute, which – the text of which talks about bodily injury, and that does seem to be consistent with ACCA, no? No, I disagree. If the court thinks we're in the land of Duenas Alvarez, that sends us to a prosecution, and we look at the facts of that prosecution. And here we have a prosecution, Hoy, where there's urine on the torso and the head, which is not painful or injurious. Every day we contact drops of liquid, and they don't hurt us. I took a shower this morning. It didn't hurt me. And that's what happened in Hoy. It's gross. It's much more offensive if we're talking about urine. But urine contacting the torso and head is not painful or injurious. How do we know? How do we know? I mean, one would hope that we'd have little experience with that. So, you know, how would we know? Well, first of all, you know, we have Ortega, Mendez, and Herrera, where the California Battery Statute was excluded as a crime of violence because it can be accomplished by throwing a cup of urine. We also know this from Justices Alito and Thomas' dissent in Johnson 2010, where they said, look at all these crimes that can be committed by offensive touching, and they cited that very California Battery Statute, which California said in pinholster can be accomplished by throwing a cup of urine on someone. So we know, you know, from the very, you know, beginnings of Johnson 2010, that throwing urine is an archetypical example. Also, I'll point out in Connors, again, we have, you know, spitting. And, again, that's squarely within quinones. I want to point out that spitting in quinones wasn't just like spitting on a boot or spitting on a sweater or something. It actually addressed spitting in the face. So we're not, you know, trying to break new ground when we say this can be accomplished by spitting in the face. Quinones already addressed that, citing the Virginia Assault and Battery Statute, citing 111A, which can be violated by spitting in a mail carrier's face. In fact, quinones collected about, I think, 10 appellate opinions, saying these spitting crimes are out. This may be uncomfortable, but the court is the stewards of the law. We're going to hear from the government about how much they hate the categorical approach. But when Pennsylvania adopts a broad interpretation of its state statute, and we have actual prosecutions that show that, this court is bound by the federal sentencing implications of that. Let's look at the language of the statute for a minute. What does the statute require? Does it not require physical force? It does not, Judge Hardiman. That's not an element of the statute. Excuse me. Bodily injury? Either an attempt to cause or intentionally or knowingly causing bodily injury.  And what I take you to be arguing is Connors, Hoy, and Childs show that the way the Pennsylvania courts interpret that language of bodily injury is to not really require bodily injury. What Pennsylvania courts said, we're going to protect our first responders, our police officers, our corrections officers. If you spit in their face, we're going to, you know, this is not really a textualist question when we're talking about intent. It's subjective. We're going to infer it from the circumstances. If you spit in our officer's face, we're going to infer from the circumstances that you intended to cause bodily injury to that officer, and we're going to prosecute you for aggravated assault. Well, then if they did cause, if the element of the offense is bodily injury, and they pleaded guilty to that offense, why shouldn't we connect the dots? Bodily injury equals physical force. It maps onto ACCA. It doesn't, Your Honor. And that's why the court said in Mayo that we haven't said that causing bodily injury or attempting to cause bodily injury always means the use of physical force. And because this is. Mayo doesn't help you because recklessness was involved there, wasn't it? I mean, and this would, if we go against you here, this would highlight just how absurd the categorical approach is because this crime is not as severe as the one that's not violent under ACCA in Mayo, right? I'm not sure I followed the question. Well, I'm sorry. Or maybe I'm thinking of Cabeda. I think I'm thinking of Cabeda. Cabeda is a severe sexual offense. The point is that we're giving the court an example of how you can cause bodily injury or attempt to cause bodily injury without the use of physical force. You can do it by spitting in the face or throwing urine. And there's not, maybe, you know, regrettably, there's not much left of Johnson 2010. But spitting is definitely left. Tapping is definitely left. I'm not sure what else, but we have spitting prosecutions here. And the court agree or not. But how do you cause bodily injury without physical force? That's what I'm having trouble accepting that we shouldn't connect the dots of bodily injury, physical force. Johnson tells us physical force equals violent force. Therefore, you're subject to ACCA. Well, I don't agree that that follows. You know, the Supreme Court intentionally left that question open in Castleman. And here we have prosecutions that show exactly how that's not the case. There may be a very small, you know, I don't know, call it a cherry pit or something, in the middle of all the bodily injury cases that are cases involving just offensive touching. But there is that category of cases. And Childs, Connors, and Hoy fall within that category. But for us to accept that argument, we would have to believe that the guilty pleas in Connors and Hoy should not have been accepted. Because if an element of the offense is bodily injury, and you're telling us the spitting is a mere offensive touching without bodily injury, then those convictions should not have been accepted. So what I'm struggling with is why shouldn't we presume otherwise that it's a valid guilty plea? If the element of the offense wasn't proved or admitted to or supported by the facts, then that judges in those cases never should have accepted those guilty pleas. If we presume that the judges are doing what they're supposed to do, it follows that there was bodily injury in those cases because bodily injury is an element of the offense. I disagree, Judge Hartman. I actually think it's pretty remarkable and anti-federalist when the government comes in and says these cases shouldn't have been prosecuted. They were prosecuted, and they were accepted by court of common pleas judges who are experts. This is their bread and butter is dealing with these criminal cases. Pennsylvania can look at the purpose of their statute. They can look at the context. They can say we've chosen to take simple assault, a very, very small actus reus. And when you commit a simple assault on a member of the protected class, we're going to protect that. But bodily injury is required for the conviction to be valid, isn't it? Am I missing something? I thought bodily injury was an element of this offense.  Or an attempt. And when we're looking at what the intent was in this case, it's not a. . . Bodily injury is not an element of the offense? Or an attempt. An attempt to cause bodily injury. And when we're looking at what the intent was of Hoy or Conner. . . I'm sorry. You're going too fast for me. Sorry. Is bodily injury an element of the offense? The offense can be committed by an attempt to cause or intentionally or knowingly causing bodily injury. I'm not asking about attempt. Is bodily injury an element of the offense? It doesn't have to occur. It can occur. In an attempt. . . It doesn't have to be. . . Okay. Not in an attempt case. Okay. But are Conner's, Hoy, and Child's attempt cases or not? Child's is not. Child's, they say that the reaction of the victim by going out and seeking prophylactic HIV treatment was foreseeable. And, therefore, Pennsylvania is going to broadly say that that's within what counts as causation under their interpretation of the law. Hoy and Conner's, we have no suggestion that there was bodily injury, either from the information in Conner's or the guilty plea. . . I'm asking if they are attempt cases. You know, they're guilty pleas, Your Honor. So we have them as prosecutions. We don't have an analysis of them. We don't have a sufficiency appeal. I can't answer that question.  So, and you can't. . . And your answer to my, what I thought was a yes or no question about whether bodily injury is an element of the offense is that it's not necessarily an element of the offense. Am I understanding your answer correctly? Yes. Bodily injury does not have to occur in an attempt. Okay. Yeah. And then the point, Judge Hardiman, is no matter how much this Court struggles with it, what we're trying to do is anticipate how Pennsylvania will apply its statute. And, you know, this Court's familiar with that concept from diversity cases. We're not trying to substitute the Federal Court's interpretation of these words. We're trying to look at how Pennsylvania will apply the statute. And the best evidence we have here of how Pennsylvania will apply its statute is these actual prosecutions. Is that best evidence sufficient evidence, though? Yeah, I understand your point, which is, well, there's a couple cases out there, three, where there's plea agreements that show that maybe possibly. . . Is that a realistic probability, though? I mean, what's the threshold at which we say, look, this is still too indeterminate. We're not seeing a likely path from Pennsylvania to know that this is the best reading of the statute. What's the stand? Where's the line? That's definitely sufficient, Judge Mady. What we have in the Court, the Supreme Court said in Taylor, was that even if the Duenas-Alvarez line of cases applied, it would be satisfied by one NPO from this Court, one non-presidential opinion from this Court. And here we have three. And one assumes statistically there are many more that we're just not able to obtain because guilty pleas don't appear in the commercial databases. Here we were lucky that one was reported in a newspaper article and the other resulted in a sentencing appeal. But, you know, the vast majority of the thousands and thousands of prosecutions that occur in Pennsylvania don't appear in Lexis or Westlaw. That's just the reality. And that's why the Supreme Court was reluctant to put this empirical burden on the defense in Taylor in 2022. Is causing the physical injury, for ACCA purposes, is it limited to direct causation or does it cover proximate causation? And is that a way to think about what was happening in Childs? Right. Childs is different from indirect force or poisoning. In Childs, there wasn't any poison. Childs didn't have HIV. Childs was dressed in gender nonconforming clothes. The police officer assumed that that person had HIV and went out and chose to take prophylactic HIV treatment. But the point is, for those first responders, right, if someone spits on them, you don't know. And so it's foreseeable that there's going to be these further physical consequences. How should we think of that in terms of causing of bodily injury? Yes, Your Honor. These are not poisoning cases. That's what you're getting to. You know, what we have, remember, in Quinones, that was infected spit. And that still didn't cross the line. That statute required spitting from someone with a communicable disease. And there was the second half of Quinones was the Borden problem that arises there, was that that statute didn't require that the person know they had HIV. Here, you know, we certainly have a Borden problem because the person doesn't even, you know, it's not only that they don't know they have it, they don't have it necessarily. So in Hoy, we have the same Borden problem that we had in Quinones. And in Childs and Connors, we have even less. We just have an assumption. And remember, Quinones says the reaction of the victim doesn't convert spitting into something else. Spitting is still spitting. I mean, Quinones, in the end, it's really the recklessness mens rea, right, that precludes it from being found to qualify. If we look at spitting, and again, Childs being perhaps an example of this, spitting at a first responder as foreseeably requiring there to be further treatment on the part of that first responder, why wouldn't that constitute sort of proximate causation of bodily injury? Well, Your Honor, I think that that's water under the bridge with Quinones. Quinones said that spitting is out under Johnson 2010. It said that even though that was definitely infected spit, not just an assumption of infected spit. And so I think that court couldn't get there from Quinones. And also, you know, if we run into the fact that what a person should think about their spit, that's a – then it creates a Borden problem. If I, you know, if I spit, it's – well, anyway, I don't want to get into anybody's health situation. All right. Thank you. We'll hear your rebuttal. Thank you. Mr. Zosmar. Good morning, Your Honor. May it please the Court, Robert Zosmar on behalf of the government. I'll address both arguments, but let's focus first on offensive touching. There's an elephant in the room here that resolves this. And the defense has spent this case walking around and trying to avoid that elephant. And that is the definition in state law of bodily injury, which just completely defeats this offensive touching notion. The statute says one has to intentionally or knowingly cause bodily injury. And there's a definition in Pennsylvania state law of bodily injury. And that's in Title 18 of the Pennsylvania statutes, Section 2301. And it defines bodily injury as, quote, impairment of physical condition or substantial pain. That is, as I often heard Judge Barry say on this Court, game, set, and match. The bodily injury is exactly what the United States Supreme Court was talking about in Johnson 2010. That might be true if we were interpreting it as a Federal court. But if the state courts have chosen to interpret this idea of causing some physical impairment as having spit even on your skin, don't we have to accept that that's the way they've interpreted this statute? Yes, you would. If there were an authoritative state decision that said spitting on someone, what the courts have always told us is offensive touching. That's what Quinonez says. If a state court authoritatively said spitting on someone is an impairment, you know, a physical condition, then yes, you'd have to accept that. No court has said that. Why don't these three cases get us there? They clearly don't, and I think they have to be looked at in the light of what the statutory language is, which my friends don't want to address. The most informative case, and it's the only published case, is the Connors case, which is the only Superior Court decision. And when you read that decision, it's very clear that the judges of the Superior Court are looking at the statute exactly the way we are, because they go out of their way to say this wasn't just spitting, this was bodily injury. And it was bodily injury because the officer went and got medical treatment that caused him significant harm, caused him pain that lasted for weeks. I'm hearing Ms. Horn sort of try to belittle that, that somebody who has spit in his eyes goes to a doctor and gets prescribed, you know, this dangerous medical treatment, but that's just not fair at all. But what matters is what the Superior Court said. The Superior Court said that's bodily injury, and on that basis we find sufficient evidence. That case supports our position. That court looked to make sure that there was bodily injury as defined in state law. The other two cases show nothing, based on a newspaper article. You know, one, the Hoy case, they give us a brief by the Commonwealth. So it's a burden of proof issue. That's what I was trying to get to with Attorney Horn, right? That's right. If the burden were on the government, you'd lose, because the record is indefinite. But I assume it's your argument that the burden to show realistic probability is on Jenkins. And because we don't know much about whether there was in fact bodily injury in Connors or Hoy, he loses because it's his burden. Is that your argument? Well, it is, but, Your Honor, this case I think is so clear that I don't believe we get to realistic probability.  I think when you have clear... We've got convictions here. We don't just have prosecutions. I understand the government's argument from other cases that, well, look, just because something's charged and prosecuted doesn't mean that there's a realistic probability. But here, we've got convictions. We have convictions for which we have no record of whether there was any judicial determination of what the facts were and whether those facts were sufficient under the statute. We have the Hoy case, which gets appealed based on the sentence. And, by the way, in the Hoy case, the conviction is not just for aggravated assault. It's also for the crime of assault by a prisoner that specifically involves spitting on, you know, or throwing a fluid on a correctional officer. So you have all those convictions bunched together and an appellate brief that talks about whether the sentence was sufficient. We have no record as to what the full facts are because it wasn't necessary. And we... But why should we speculate about those additional facts? I mean, what we have in front of us on the record of both of those cases indicates that all that was involved, at least all that the papers tell us is involved, was spitting. Because I'm suggesting when you have statutory language that is as emphatically clear as it is here, where the state legislature is defining the crime of aggravated assault, it takes a lot more than just the charging language or a brief factual summary not relevant to the outcome of the case to defeat that. And what's at stake here, of course, is... You're asking us to defy state law, though. If we're going to defy this statute in a highly atextual way, don't we have to swallow that whole? We can't then turn around and say, no, that's not really Pennsylvania law. Of course, Your Honor, but we don't have anything here remotely approaching a statement of the Pennsylvania Supreme Court giving an atextual interpretation. No, but we've got three convictions under the statute involving behavior that's not at a common sense level readily attributable to Pennsylvania law. And we've got three convictions associated with bodily injury or physical force. But if those judges were doing their jobs, when they took the guilty pleas, one would have expected that they would have made sure that the elements of the offense were met. We have the Childs case where the Superior Court, which supports us, which made clear that the elements of the offense were met, including bodily injury. We have two other cases, one based on... And how do we know that in Childs? The opinion itself says that the evidence is sufficient because there was bodily injury. And then it explains that the bodily injury was what the officer suffered as a result of the medical treatment that he underwent as a result of the assault. Doesn't that just highlight, though, that it's... I mean, the Court is recognizing it's not spitting itself that carried physical force or that inflicted bodily injury. There's this intervening event of the preventative treatment which causes that injury. And, you know, the Court seems to go out of its way to say, you know, on these particular facts, it's going to find that there was injury. It is a proximate cause issue, as Your Honor mentioned before. This gentleman does not go suffer this injury if not for the fact that he was assaulted. And as a result, the Court holds, as the statute requires, this defendant intentionally caused bodily injury to this officer. There's no statement here that intervening events become a crime. The crime is what this individual did and what the result of it was. The other two cases, Hoy and Connors, again, we just have no record. We are speculating as to what the Court would have said had it been presented with a full set of facts and a sufficiency question. And I want to emphasize, again, what's at stake here is whether A3, assault on a police officer and on other law enforcement officers, qualifies as a crime of violence. The categorical approach, of course, produces ridiculous results. We all know that. But there has to be a limit to the nonsense. And there has to be a limit here where you have explicit statutory language that says intentionally caused bodily injury. You have a definition of bodily injury, which is substantial impairment of physical function. The United States Supreme Court said in Johnson 2010 that physical force, what we're talking about in the elements clause, physical force means force capable of causing physical pain or injury to another person. This is a match, and I submit we need a lot more than an appellee brief on a sentencing issue to defeat the very clear reading of state law and then declare that no assault on a police officer in Pennsylvania is a crime of violence under federal law. The... So maybe it sounds like you're arguing that a few prosecutions aren't enough, a few convictions aren't enough. You want us to do what we typically do, which is to go look at whether the Supreme Court has spoken. If the Supreme Court of Pennsylvania has not spoken, then we see if the Superior Court has spoken. If it hasn't, then we do our best to predict what the Pennsylvania Supreme Court would say. Is that what you're asking us to do here? You're asking us to predict that if this issue went up to the Pennsylvania Supreme Court, the Pennsylvania Supreme Court would agree with you that bodily injury means physical force? I am asking you to do that, but I'm also asking you to do what this court always does, which is start with the statutory language. There's not much doubt here when you read the Pennsylvania statutes, including the definition of bodily injury in Section 2301. Yeah, but we can't stop with this. We should obviously start there, but we can't stop there. I mean, we've seen opinions of this court writing rather atextual interpretations of statutes. I have New Jersey in mind in certain cases where I read the statute and looked pretty clear, and then the New Jersey Supreme Court said the opposite. So we follow what New Jersey Supreme Court says, not what the statute says. Sure, and again, I recognize throughout this argument that if there were an authoritative statement of a state court that was atextual and that defeated this very clear textual language, then yes, we wouldn't be here making this argument, but there's not. That's why I was surprised when you said the categorical report produces absurd results. I thought your argument was it doesn't or shouldn't produce absurd results if you start with the statutory text and proceed from that as opposed to starting with a hypothetical and build backwards into a possible theoretical mismatch, and that that's really not what the realistic probability test is. It's something much more definite based on something firmer like you're talking about. Sure. I mean, we are currently engaged in a tremendous amount of litigation involving the categorical approach, and it rears its head in many different areas. This one is unusually straightforward, where you do have this very clear statutory language that allows us to say it's a categorical match. And sure, it's totally appropriate for the defense to then look around and say, can we find that the Pennsylvania Supreme Court has interpreted this differently than it would appear on its face, but it's not there. So as categorical approach matters go, yet this one is much more straightforward than many, because you have this... It's straightforward and yields the really bizarre result based on what we wrote in Mayo. That a more severe crime in Mayo is not ACRA qualified, but this one, which is less severe, is. Right. Now, that certainly happens, but, of course, the Court is familiar with our position regarding Mayo that Mayo was wrongly decided, and we've been advocating that now for many years. The issue is still pending. I would like to refer the Court, because we didn't exhaustively brief it here, the reason that, if I can turn to that second point just briefly that my friends have made regarding the fact that they say this could be based on an omission to act. Well, there, there is no case. They don't have an appellee brief, they have nothing to show that A3 has ever been charged based on an omission to act. Instead, they want to say that, you know, Mayo must apply here, but Mayo is a different statute. A1 involves an extreme recklessness mens rea as well. The one who commits aggravated assault does it knowingly, intentionally, or with extreme indifference to human life. It's not as clear and explicit as A3 is, which simply says intentionally or knowingly caused bodily injury, period. But depending on what the Pennsylvania Supreme Court says, it may well affect our interpretation of A3. It could. As Ms. Horne suggested, it's a really confusing matter because the parties dispute the meaning of the question that was sent to the Pennsylvania Supreme Court and what the import of it will be depending on the answer. Our position is very clear, which is that what physical force is, is a question of federal law. That's what the Supreme Court said in Johnson 2010. It's not treating the question that way. Mayo then reaches a conclusion that an omission to act by a parent who starves a child is not the use of physical force. That reasoning has now been rejected by all eight other circuits that have considered the issue. And so we'll keep pushing our position on it that it's just wrong on numerous bases, but it also is a different statute. And it's the only statute in which this court has cited a state example that supposedly involves an omission to act. We dispute that also, but nothing has been suggested here regarding A3. I'll just refer, we most recently in the last few weeks submitted a brief in a government cross appeal in the small case. It's number 22-1631. And if you're interested in our latest exegesis on Mayo and summarizing all of the cases that are now out there from other circuits, you can find it in the small decision. I want to say one last thing about physical injury that I should mention, which is that the Ramos case is also very authoritative on this also. Ramos is the 2018 decision of this court, roughly at the same time that Mayo was issued. And Ramos addresses section A4, which is also second degree aggravated assault like A3, also requires intentionally causing physical injury in that subsection with a deadly weapon. Ramos suggests very strongly that it found that this is a crime of violence just based on physical injury alone. It also talks about the deadly weapon, which sort of nails the point home. But with regard to physical injury, it does cite the Pennsylvania definition that my colleagues have ignored. And it says, this is Johnson 2010, you can't engage in physical force under federal law. You can't commit bodily injury under federal law without engaging in what the elements clause calls physical force. That's one of the holdings of Ramos. But doesn't that turn on the presence of a deadly weapon? It does not. I would submit, Your Honor, that if you read the Ramos decision, it certainly, I think Judge Roth wrote that, and it certainly covers all the bases, as she does. But no, I think it's very clear that this result is appropriate based on the physical injury requirement alone. And there are also at least three not precedential decisions of this court regarding A3 that have reached this result. Because again, we're just dealing with very clear, straightforward statutory language. Looking at the analogy to A4, what's the government's view of whether we should think of transmission of bodily fluids like a poison case? Like a deadly weapon? Well, transmission of bodily fluid, we're bound by quinones, this court's decision. That involves the assault by a prisoner statute, where someone expels bodily fluid on a correctional officer. And there's no mens rea requirement there with regard to the fact that it's infected bodily fluid. And this court holds that that's a species of offensive touching. Hard as that may be to get your arms around, but that this is offensive touching and that that does not qualify as physical force. So we're bound by that. But again, this is not an offensive touching statute. In fact, it's sort of interesting that it's the same part of the Pennsylvania Code that has this aggravated assault provision that has that separate assault by a prisoner statute that specifically addresses bodily fluid and does have that lesser mens rea. These are just completely different provisions. Is there authority that you know of for the proposition that the existence of a more specific statute like that, under which the government could proceed, should factor into the realistic probability analysis? I can't cite you a case that says that. I think it's a reasonable conclusion. I'm not saying it's dispositive, but I think it's certainly one of the things that can be considered. But again, the overriding thing to consider here is the statutory language, both in A3 and in the state definition of bodily injury. The defense, as is their obligation, try as hard as they can to come up with that hypothetical that does not involve violent force so that everybody who commits an A3 offense is absolved of an act of violent felony. Here they've come up with offensive touching, and it just doesn't stick. And it doesn't stick based on a couple state prosecutions where we don't even know the full facts or what was decided in court as to whether it was sufficient. Do we go off of what we do know, that is, what is in the record about given cases before us when we're doing our realistic probability analysis? Or should we be speculating about what other facts there might be in a fuller record? I think it would be very inappropriate to speculate on what other facts there might have been. I think what matters is do we have an authoritative state court decision that is atextual, to use Judge Hardiman's word, and we don't. We clearly don't. In this case, isn't the government the one asking us to speculate as to there being other facts and circumstances in addition to the spitting that appears on the face of the information? We're not asking you to speculate. We are saying that the child's decision supports our position in the fact that the court required there to be bodily injury, and that the other cases, we're not speculating. There's just no record. There's just nothing. We're just saying that nothing has been put before the court. Well, a conviction isn't nothing. It's not, but a conviction without knowing the facts and without knowing that a court was asked to pass on this issue is nothing. And whose burden is it to show that we don't know? Again, I don't think it matters. I just don't think we have... I think it matters. I would beg to differ. Look, the government has argued for decisions. You want decisions, right? And I'm not sure what the authority is for that. I don't see any clear case law out there whether the reasonable probability test requires prosecutions, convictions, or decisions. You argue for decisions. I don't know if that's right or not, but if convictions suffice, then... And I think that makes some sense, perhaps for convictions to suffice, then the burden of proof would seem to be dispositive here. Because if it can be shown by the record that those convictions were consistent with the text, then you win. And if those convictions are atextual, inconsistent with the text, then you lose. But it all depends on who... And if the record as it appears to me, unless either of you have convinced me otherwise, I haven't heard a reason yet from either of you that the record in Connors and the record in Hoye is so sparse that I don't really know what happened, which is why I keep pressing you and Ms. Horn about this burden of proof issue. If we are dealing with the rational probability test, the burden is on the defense. Duenas-Alvarez makes that clear. The burden is on the proponent who is saying that this is not what they call legal imagination, that there is an actual example of a prosecution resting on this theory. Yes, there is a burden. And again, we just have no record here to establish it. And it would be a very... I would just say, you know what, I heard about a conviction out in Cambria County one day where nobody really disputed. The guy was charged with five counts, one of which was aggravated assault, and I hear he pled guilty and the court took the plea. And on that basis, we have categorically excluded aggravated assault, which is always a violent assault on a police officer. It just can't be. But what we have here is not just the charge, it's specific facts that are alleged as giving rise to that charge. We have in one case, Your Honor, the facts that were alleged only in the charging document. Again, we don't know if there was ever a trial, if it was ever tested, what facts were put forward, whether there was a sufficiency challenge. In the Hoy case, we have a summary that was stated at the factual plea. But it was stated as the basis for numerous charges, including the assault by prisoner statute. And there's no test of whether that is sufficient for aggravated assault or not. And instead, they just dispute the length of the sentence that the defendant received for the multiple different statutes that he was convicted of. There is no record showing that a Pennsylvania court has found that A3 factually can be based on offensive touching. And that in a manner that so starkly conflicts with the statutory language and the Pennsylvania definition. How should we read it? Taylor has told us very recently that or seems to tell us that the court was looked skeptically, to put it kindly, at the government's argument that it wasn't sufficient for the defendant to have identified cases where the government had convicted individuals for attempted Hobbs Act robbery without proving a communicated threat, and also seemed to look skeptically at the government's argument that the burden was on the defendant to present empirical evidence about the government's prosecutorial habits. Taylor certainly removes the realistic probability test with respect to a federal statute. It does speak negatively about it, and I think I'd go so far as to say it rejects it. It simply won't apply. So Taylor involves Hobbs Act robbery, the question of whether that attempted Hobbs Act robbery, qualified as a crime of violence under Section 924C. The Supreme Court says you can attempt to threaten someone without force, and therefore categorically this will never be a crime of violence. Government comes back and says, wait a second, we've never charged anybody with attempting to threaten. And the Supreme Court says we're not going to apply realistic probability. It says we've done that in the state context, because that is respecting state authority to define its offenses. But it goes into reasons why it just doesn't matter for federal crimes. Here, of course, we're dealing with a state crime, and the Supreme Court authority remains binding that the realistic probability test applies here. It certainly hasn't been met. Thank you, Your Honor. Thank you, Mr. Zauser. Rebuttal, Ms. Horne. Thank you, Your Honors. First thing, this Court needs to reject the government's attempt to raise the bar on what the Duenas-Alvarez line of cases requires. Maybe before Taylor there might have been some uncertainty there. Taylor lays it to rest. We're looking at either prosecutions or guilty pleas, what the empirical search would produce. The government at some point during its argument actually demanded a Pennsylvania Supreme Court case. If we even go back to Duenas-Alvarez itself, it said it could be satisfied by the defendant's own case. So certainly not something that requires a presidential opinion of the state highest court. As to what these cases show, we have the entire statement of the facts in the guilty plea colloquy in Hoye. We have a full recitation of the facts in Childs, and we have the charging document in Connors. We're now in the remarkable position where the government is asking this Court to throw out the state cases to say that there's a problem, that the state prosecutors were wrong for prosecuting these convictions, the expert trial judges were wrong for accepting the guilty pleas, and that in this greatly anti-federalist approach that this Court should reinterpret the statute. Pennsylvania has a right to look at the purpose of its statute, to apply its criminal offense broadly, to protect police officers and other first responders. I'm not sure what you just said is consistent with what I just heard from Mr. Zosmer, because I didn't hear him say to discard Childs. I heard him say that Childs supports his argument. And the brief explains, according to them, why it supports their argument. So can you address that directly? Sure. So Childs supports us because Childs didn't actually have HIV. This was the reaction of the victim. And what the government does say is the Court should disregard Hoy and Connors. It has a remarkable statement that these were probably improvidently prosecuted, and they weren't. But wait a minute. Childs specifically says, I'm quoting from it, Sergeant Medicki actually suffered bodily injury as a result of a pellet spitting in his mouth and eyes. It's sufficiency of the evidence, and they said bodily injury. That seems to support that the elements of the offense were met. Well, the problem with that is Quinones. Quinones says if I spit in the face, that's likely to provoke a physical reaction. It did provoke a physical reaction there. The officer sought prophylactic treatment. If, let's say, Childs tapped once on the officer's shoulder and the officer had an equally ignorant view about the modes of transmission of HIV and went out and sought prophylactic treatment, the government would be saying that a tap now is not Johnson 2010, but is physical force under the ACCA. And that's not true. And the same is here. We don't have much, but we have a tap and spitting, certainly. And those don't become something different because an officer goes out and seeks prophylactic treatment. And Pennsylvania's... That sounds like you're arguing that there wasn't bodily injury in Childs. Is that your argument? That's the Pennsylvania court said that there was. Childs is an opinion by the president judge, and there was, aliquotter was denied in that case. So that's good law and that's helpful law. How is, I'm so confused by that, how is it helpful to your argument that the Pennsylvania court in Childs held that the officer who was spat upon suffered bodily injury? How does that help your case? I thought you were arguing that spitting isn't bodily injury. Well, the global question in the matter here, Judge Hardiman, is there some little nugget, is there some little, you know, some cherry pit in here where you can cause bodily injury without the use of ACCA force, without the use of Johnson 2010 force? Right, and if theoretically the answer to that is yes, let's assume the answer is yes, that would help you. But Childs' answer is no. In Childs, they don't say it didn't cause bodily injury. Childs said that it did cause bodily injury. The answer in Childs is yes. In Childs there was spitting, and this is the rare case where spitting, because of Pennsylvania's broad interpretation of its statute, was interpreted by the state law to mean it caused bodily injury. But again, we have... Right, so if spitting can cause bodily injury, if Pennsylvania courts have told us that spitting can cause bodily injury, and in fact it did in Childs, why should we extrapolate from that that in Hoy and Connors there wasn't bodily injury? We're not extrapolating, Judge Hardiman. We have the guilty plea colloquy in Hoy, and we can't speculate that there were more facts that weren't presented to the court in the guilty plea colloquy. What is happening in these cases is Pennsylvania says if you spit in the face of our police officers, we're going to look inside your mind, we're going to say, we're going to infer from the circumstances that inside your mind you had the intent to cause bodily injury, and that's enough under the statute. But all you did was spit. And so there's a mismatch here. It's not a categorical match between the state offense, where all you have to do is spit on somebody, and the ACCA definition. And the court might disagree with those state cases, even if the court frames it as Your Honor did, you know, is this a matter of predicting state law? We predict state law by looking at Pennsylvania Superior Court MPOs, as the court did recently in Veramindi. We look at even opinions of the Court of Common Pleas. These are experts who accepted the guilty pleas in Hoy and Connors, and it's remarkable for the government to say that those were improvidently prosecuted. They take aim at the prosecutors, but of course the judges accepted those guilty pleas there. I want to make sure I understand your arguments in Childs. Are you essentially saying that what the state court there concluded constituted actual bodily injury would not have qualified under ACCA because it was downstream kind of injury, not initial injury? Yes. So you're not disputing there's actual injury, you know, there's an injury in fact. Your point is that that's a kind of injury because we've got this intervening event that would not qualify for ACCA purposes? Yes, Judge Krause. If we go back to the very beginning, to Johnson 2010, and we look at Justice Alito and Justice Thomas' dissent, they're railing against the fact that spitting is excluded. And they say, but spitting can result in physical force. For example, when one bark patron spits on another, physical force is likely to be the result. And it's the same thing here. There was spitting, and through a chain of assumptions that have no basis in fact, there's the prophylactic treatment that happens. The same as if you assume that a tap could transmit HIV. That sounds like a compelling argument that the court in Childs adopted the views of the dissent that you just recounted. There's a dramatic mismatch between the way Pennsylvania interprets its statute, extremely broadly protective of its victims, and the way the ACCA has been interpreted under state law. And because there's that mismatch, it's not a categorical match. All right, thank you very much, Ms. Horne. Thank you, Mr. Zosmer, for reminding us that the categorical approach is the gift that keeps on giving.